**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**KIMBERLY L. EASTER**                                                 **PLAINTIFF**

**VS.**                 **CASE NO. 1:11CV00094 HDY**

**MICHAEL J. ASTRUE, Commissioner,
   Social Security Administration**                           **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for supplemental security income (SSI). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome. *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act. Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI on September 28, 2009, alleging she had been disabled since January 1, 1994.  Her application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 43 years old at the time of the hearing, which was conducted on January 26, 2011.  (Tr. 50-71).  The plaintiff, a high school graduate, testified at the hearing.  A vocational expert witness also testified.  The plaintiff testified that she had been incarcerated from August of 2008 through September of 2009.  She stated that she lives with her husband "off and on." (Tr. 55).  The plaintiff indicated that she last drank alcohol more than two months before the hearing, and last used marijuana four to five months prior to the hearing.  According to the plaintiff, she was diagnosed with Hepatitis C "a long long time ago." (Tr. 56).  She stated that she was supposed to have taken medication for Hepatitis C while in prison, and she also noted that she did not take any antidepressants or other mental health medications while incarcerated.  The plaintiff conceded that she smoked marijuana that contained crack cocaine in the year prior to the hearing.  She stated that she hurt her left shoulder about four years prior to the hearing.  She flatly stated that she did not currently drink or use drugs.  She testified that she is sick often with her Hepatitis C, and her daily activities include cleaning the house and eating.  On questioning from her attorney, the plaintiff stated that she uses part of her utility check from HUD to pay for her medications, which cause some drowsiness.  She stated that she takes her medicine as prescribed.  The plaintiff indicated she could sit, stand, and walk, but sometimes had blurred vision due to high blood pressure.  She stated that she could not run or jump, or lift and carry, and that pushing and pulling caused pain.  (Tr. 62).  Mentally, the plaintiff stated she was doing better with her medication, but that she has memory problems.  She stated she was not emotionally stable.  She testified to receiving treatment many

times for mental health.  She stated that she takes Depakote.  Describing her daily activities, the plaintiff mentioned watching television, cleaning her house, eating, and reading her Bible.  She stated that she rises early but goes to bed "usually at dark."  (Tr. 65).  After noting that the plaintiff has no past relevant work history, the ALJ posed a hypothetical question to a vocational expert, assuming an individual who could perform medium unskilled work where interpersonal contact was only incidental to the work performed, where complex tasks would need to be learned and performed by rote, and where the work would contain few variables and require little judgment, with simple, direct, concrete supervision.  (Tr. 68).  The vocational expert opined that such an individual could perform the jobs of cleaner I and cashier II.  A second hypothetical question was posed to the vocational expert.  This question contained the same assumptions as the first, with the exception of a light exertional level rather than medium.  The vocational expert stated that such an individual could perform cleaner, cashier, and laundry jobs.

On March 18, 2011, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 27-43).  The ALJ specifically found the medical evidence established the plaintiff has the following severe impairments: bursitis in the left shoulder with radiculopathy on the left; hepatitis C; and mood disorder and anxiety related disorder.  The ALJ found the plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found the plaintiff has the residual functional capacity to perform light, unskilled work.  In reaching this conclusion, the ALJ analyzed and discounted the subjective allegations of the plaintiff.  The ALJ determined the plaintiff had no past relevant work.  The ALJ, noting the nonexertional impairments of the plaintiff and relying upon the testimony of the vocational expert, found the plaintiff could perform work that

exists in significant numbers in the national economy. For example, the jobs of cleaner and cashier were cited. Thus, the ALJ found the plaintiff was not disabled. The Appeals Council, on October 18, 2011, denied plaintiff's request for review (Tr. 17-19), and plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff asserts that the ALJ erred by: (1) failing to

properly consider her mental impairments in assessing her residual functional capacity (RFC); (2) failing to consider her carpal tunnel syndrome and its effect on her RFC; (3) failing to give the proper weight to her subjective allegations; (4) giving too much weight to the non-examining sources and a one-time consultative examiner; and (5) posing a flawed hypothetical question to the vocational expert at step five of the sequential analysis. *Plaintiff's brief at 12-25.*

The plaintiff first urges that the ALJ failed to properly consider her mental impairments in assessing her residual functional capacity (RFC). We find no merit in this argument. A review of the ALJ's opinion shows that he addressed the mental impairments alleged by the plaintiff[1]. He found the plaintiff had no more than moderate limitations in her activities of daily living, no more than moderate limitations in social functioning, moderate limitations in her ability to maintain concentration, persistence or pace, and the ALJ found no episodes of decompensation. Based upon these findings, the ALJ concluded the plaintiff did not meet a listing, and that the plaintiff's mental impairments have more than a minimal effect on her ability to do basic work-related activities. This effect was taken into consideration when the ALJ questioned the vocational expert. The hypothetical questions posed to the witness included limitations, such as limited interpersonal contact and direct supervision, which corresponded to the plaintiff's impairments. We find no error in the ALJ's conclusions concerning the plaintiff's mental impairments, or in the manner in which the ALJ integrated his findings into the questions posed to the vocational expert.

---

[1] The plaintiff cites the reports of Dr. Hester and Dr. Adams as supporting her mental impairment claims. The ALJ discussed Dr. Hester's findings. However, Dr. Adams' report was not available to the ALJ at the time of his ruling. The report was submitted to the Appeals Council. Dr. Adams' findings are quite consistent with those of Dr. Hester, emphasizing the plaintiff's need for simple directions and low levels of interpersonal contact. These concerns were addressed by the ALJ and included in his questions posed to the vocational expert.

The second claim of the plaintiff is the ALJ failed to consider her carpal tunnel syndrome and its effect on her RFC. After the administrative hearing and the ALJ's decision, the plaintiff was diagnosed with moderately severe carpal tunnel syndrome of the left upper extremity. She argues that this new evidence requires reversal or remand of the case. The defendant correctly notes that the plaintiff did not allege a disabling hand impairment in her application materials, in her testimony at the administrative hearing, or in her brief to the Appeals Council. Typically, the failure to allege a disabling impairment is a sufficient basis for upholding the decision of the Commissioner. *Sullins v. Shalala*, 25 F.3d 601 (8th Cir. 1994). Here, we note that the plaintiff's brief to the Appeals Council, while not mentioning carpal tunnel syndrome, does argue that she could not do light work due to joint and shoulder pain. The Appeals Council was provided the Neurodiagnostics Report which showed "moderately severe carpal tunnel syndrome of the left upper extremity." (Tr. 862). The report provides little other data, except to note the plaintiff's ulnar and radial nerve studies are otherwise normal. Given the sparse information to support the claim the plaintiff now makes with regard to carpal tunnel syndrome, we find substantial evidence supports the Commissioner's decision. There is no merit to the second claim of the plaintiff.

Plaintiff next contends the ALJ failed to give the proper weight to her subjective allegations. The ALJ utilized the familiar framework from *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984) in considering the plaintiff's credibility. The ALJ noted that the subjective complaints of pain were not matched by objective medical evidence, that no medical source had opined that the plaintiff was disabled, that plaintiff had a weak work history, that plaintiff was frequently noncompliant with medical directives, that she had sought medical care on an infrequent basis, and that her daily activities were inconsistent with her subjective complaints. Our review of the thorough analysis of

the ALJ's credibility assessment shows his conclusion is supported by substantial evidence.

The fourth claim of the plaintiff is that the ALJ gave too much weight to the non-examining sources and a one-time consultative examiner. The plaintiff specifically argues that the state agency medical consultants did not personally examine the plaintiff, and that consulting physician Dr. Sudesh Banaji examined her only once. As a result, the plaintiff contends the ALJ should not have assigned as much weight to these opinions. We find no error in this regard. The findings of the state agency consultants and of Dr. Banaji were cited by the ALJ. The ALJ noted he "was not bound by the findings of these medical consultants." (Tr. 41). The opinions were cited simply because they were consistent with the ALJ's conclusions. We note that the opinions of the non-examining sources and of Dr. Banaji were not opposed by any medical care provider, as no physician opined that the plaintiff was disabled. There is no merit in the fourth claim of the plaintiff.

The final assertion of the plaintiff is that the ALJ posed a flawed hypothetical question to the vocational expert at step five of the sequential analysis. This argument is intertwined with claim three, where the plaintiff alleges error in assessing her subjective allegations. The allegedly flawed hypothetical questions were premised upon the credibility findings of the ALJ. We have previously found no error in the credibility evaluation. It follows that the hypothetical questions based upon the credibility findings are supported by substantial evidence.

In summary, for the reasons cited herein, we find no merit in the arguments advanced by the plaintiff.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this __17__ day of July, 2012.

                                                            _/s/_____
                                                            UNITED STATES MAGISTRATE JUDGE